Martin L. Straus, II v. Commissioner.
Straus v. Commissioner
Docket No. 25544.
United States Tax Court
1952 Tax Ct. Memo LEXIS 127; 11 T.C.M. (CCH) 786; T.C.M. (RIA) 52231; July 30, 1952
*127 Upon the record it is held that the granting to the petitioner by his employer of an option to purchase 2,500 shares of its common stock at a fixed price was not done with intent to compensate petitioner for services rendered or to be rendered but to permit him to acquire a proprietary interest in the corporate employer which would tend to induce a continuance of his service. Further held that the option granted with such purpose and intention did not result in a realization of income by petitioner upon its exercise. Roswell Magill, Esq., 15 Broad St., New York 5, N. Y., for the petitioner. David F. Long, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: This proceeding involves a deficiency in income tax of $49,928.05 asserted by respondent for the calendar year 1944. The issue is whether respondent erred in increasing petitioner's income for the taxable year by an amount determined by him to have been compensation for personal services and representing the difference between the market price and the option price paid by petitioner for the shares of common stock of his employer. Certain facts have been stipulated and such *128 stipulation is hereby included by reference in our findings of fact. Other facts hereinafter set out and not stipulated are found upon testimony introduced on the hearing. Findings of Fact Petitioner is an individual with an office in New York City. The return for the period here involved was filed with the collector of internal revenue for the first district of Illinois at Chicago, Illinois. Petitioner reports upon a cash receipts basis of accounting. In 1938 petitioner acquired certain stock of the Wahl Company, a corporation engaged in the manufacture of writing implements and other products, and in January 1940 owned more than 5,000 of the common shares of that company and a considerable amount of its preferred stock. In 1939 petitioner became associated with the management of the Wahl Company as a director, and in December of that year was elected chairman of the executive committee of the board of directors. In the spring of 1940 he was elected president of that company, and held these positions for about 10 years thereafter, including the period when the Wahl Company became Eversharp, Inc. At the beginning of 1940 the Wahl Company was in a practically moribund condition. *129 It has incurred losses in all but two of the 16 years in which it had done business, had paid no dividends on its common stock during most of this time, and was heavily in arrears on dividends on its cumulative preferred stock. In 1940 the company, under the direction of petitioner, was reorganized by the merger into itself of one of its wholly-owned subsidiaries, and its name was then changed to Eversharp, Inc., hereinafter called the Company. Within a few months after the aforementioned reorganization, the Company, under petitioner's direction, began the marketing of a new product and adopted a national advertising program. It also made changes in its managerial personnel. In September 1942 it caused a wholly-owned subsidiary, War Products Division, Eversharp, Inc., to be organized for the purpose of entering into a prime contract with the United States Navy for production and delivery of certain types of aviation equipment and parts. This contract with the Navy was received during 1942, and production thereunder was begun during 1943. Upon its organization in 1940 the Company was authorized to issue 200,000 shares of preferred stock, together with common stock. Stockholders *130 had preemptive rights to subscribe to new shares of common stock issued in excess of 150,000 shares. Since 117,048 shares of common stock had been issued in the reorganization for the outstanding stock of the Wahl Company, there were left 32,952 shares of unissued common stock free from stockholders' preemptive rights. During 1940, discussions were held between petitioner and the executive committee of the board of directors with respect to the adoption of a stock option plan which would reserve the aforementioned 32,952 shares of unissued common stock for option at a future time at a fixed price to the executive and supervisory officials of the Company. In October 1942 petitioner was asked by the board of directors to formulate a plan respecting the optioning of this stock. On December 8, 1942, the board of directors unanimously agreed that such options should be granted for a period of from three to five years, and that all such options, whether issued then or at a later date, should be at a price of $6 per share. The market price of the common stock of the Company on this date, December 8, 1942, was $4.50 per share. The plan agreed upon was formally adopted and embodied in a corporate *131 resolution at the January 27, 1943 meeting of the board of directors, the stated purpose as set out in the resolution being the insuring of "the permanence of the association" of principal officers and supervisory employees with the Company by increasing their personal investment in the common stock of the Company. The terms of purchase under the aforesaid resolution provided that the options issued under the plan should not be assignable, except in the event of the death of an optionee, in which case the option was to pass to his personal representative. It was further provided that in order to be entitled to purchase the stock under an option granted, the officer or employee was required to be still in the employ of the Company at the time of the exercise of the option unless his employment had been interrupted or terminated solely because of incapacity resulting from accident or ill health. Under this resolution 22,000 shares of the 32,952 shares reserved for option purposes were allotted to named individuals, including 10,000 shares to petitioner. The balance of 10,952 unissued shares not yet optioned were reserved, earmarked and set aside for purchase "on the same terms, under *132 similar options, from time to time in the future, by such other officers and employees of the Company as may be determined from time to time by the Executive Committee of the Board of Directors; * * *." The option terms included the option price as formally agreed upon of $6 per share. The market price of the common stock of the Company at this time was $6.87 per share. An option agreement with respect to the 10,000 shares allotted to petitioner on January 27, 1943, was issued to the petitioner on May 29, 1943. At this time the market price of the stock was $17.25 per share. On October 2, 1947, the respondent ruled, by letter addressed to the Company, that the purchase of the 22,000 shares allotted to various individuals under the plan by the board of directors on January 27, 1943, did not result in income to them as compensation. At a meeting originating on June 2, 1944, and reconvened on June 7, 1944, an additional option to purchase 2,500 shares of the common stock of the Company was authorized for issuance to petitioner. The petitioner was issued an option agreement with respect to these 2,500 additional shares on June 27, 1944. The terms of the option agreement, including the *133 price of $6 per share, were in accordance with the aforementioned resolution of January 27, 1943. The petitioner exercised his option and purchased the 2,500 shares of common stock on June 30, 1944, at the price of $6 per share. The market price of the common stock of the Company on June 2, 1944, was $23.25 per share; on June 7, 1944, $23.75 per share; and on June 30, 1944, $28 per share. On its original return for the year 1944 the Company did not claim a deduction for compensation paid in respect of the 2,500 shares of the common stock sold to the petitioner in that year. At the time of the authorization of the option to petitioner of the said 2,500 additional shares of common stock, and at the time the option issued was exercised by petitioner, he was the owner of 10,041 shares of the common stock of the Company, and The Advance Company, a Delaware corporation of which petitioner owned approximately 75 per cent of the outstanding stock, owned approximately 30,000 shares of the common stock of the Company. The net sales, net profits before taxes, and net profits after taxes of the Company during the fiscal years ended the last day of February, 1940 to 1946, inclusive, were as *134 follows: Last day of
Net Profit
Net Profit
February
Net Sales
(Before Taxes)
(After Taxes)
1940
$ 2,001,674
$ 11,997 (loss)
$ 11,997 (loss)
1941
2,108,211
345,913 (loss)
345,913 (loss)
1942
4,130,091
365,276
365,276
1943
6,925,596
925,802
571,421
1944
8,947,056
1,445,844
465,844
1945
20,860,838
3,597,148
1,009,148
1946
29,080,850
5,602,445
1,805,445
Petitioner's salary from the Company during the years 1942, 1943 and 1944 was: 1942
1943
1944
Eversharp, Inc.
$44,583.32
$54,000
$64,415
Eversharp. Inc., War Products Division
6,249.99
24,996
14,581
$50,833.31
$78,996
$78,996
Opinion In determining the deficiency here in controversy the respondent has determined that petitioner realized taxable income upon his purchase of the additional 2,500 shares of common stock under the option granted him by his Company, in an amount equal to the difference between the option price of $6 per share and $28 per share, the fair market price for such stock at the time of purchase. The correctness of respondent's action is the issue presented. Whether income is realized by an officer or employee upon *135 the exercise of an option granted him by his employer for the purchase of its stock at a fixed price is to be determined from the intent and purpose of the employer in the granting of the option. This intent must be determined from all the facts and circumstances surrounding the transaction. If the option be granted as consideration for services rendered, the gain resulting from its exercise represents income subject to tax. ; rehearing denied, . If the option be granted by the employer not to compensate the officer or employee for services rendered or to be rendered, but to enable him to acquire a proprietary interest in the corporation employing him, the transaction does not result in a realization of income upon the exercise of the option. ; ; . Respondent's principal contention is that the spread between the option price and market value of the stock on the date of its issuance being $17 per share, which spread was substantial, was strong evidence of an intent *136 to compensate the employee for services. Respondent concedes that in the original conception of the option plan the intent of the Company was not to compensate for services by issuance of options, but to secure a material interest in the corporation by its key officers and employees, and that the optioning of the first 22,000 shares of the total number of shares earmarked and set aside under the plan for option purposes was done in accordance with such intention. It is his theory, however, that at the time of the optioning of the remaining shares reserved and set aside for optioning the purpose and intent of the Company had changed and that these shares were used for the purpose of paying compensation for services rendered by the optionee. It would appear that this theory has as its basis little more than the fact that the fair market price of the stock had increased so that the spread between the option price and market value at the time of the issuance of the option was greater. The option price of $6 per share was formally adopted as a part of the option plan and was not deviated from. This plan was one with respect to the total 32,952 shares earmarked and set aside for option *137 purposes. As we see it, the option price of $6 per share as set was but a part of the entire plan conceived in 1940 and formally adopted by the resolution of January 27, 1943, when the price of shares on the market was $6.87. The fact that the Company did not increase the option price originally adopted indicates an adherence to the option plan and a continuance of the original intention. The Company was in no position as a practical matter to vary the option price plan when it sought to option the balance of the 10,952 earmarked shares. To have increased the option price, would have defeated the very purpose of the plan by refusing to grant employees to whom the balance of the stock was later optioned a basis as favorable as that given in the original options granted. On the question of the difference between the option price and market value of the stock at the time the option was granted as establishing an intention to compensate an officer or employee rather than secure to him a personal interest in the corporation, in the comparatively recent case of , we held the option not to have been issued as compensation, although at the time the option *138 price was fixed, the fair market value of the stock was more than four times that price.
The plan as a whole and the surrounding circumstances indicate an intent to give the officers and employees a proprietary interest in the business rather than to compensate them. At the time the plan was conceived the Company was reorganizing and seeking to retain able personnel and attract new talent. The plan was not part of a bonus arrangement. . No prior bonus arrangement was replaced. The petitioner's salary was not reduced nor were his duties or responsibilities changed in consideration of the granting of the option, and there was no indication that petitioner agreed to serve his employer at a fixed salary disproportionate to the value of his services. . We conclude, therefore, that the transaction was in fact what its form indicates, the purchase of employer's stock by petitioner under an option granted him by the employer not to compensate for services rendered or to be rendered, but to give him a proprietary interest in the business. Decision will be entered for the petitioner.